102 So.2d 28

### Harold WALLIS
### v.
### STATE.
### 6 Div. 87.

Court of Appeals of Alabama.

Dec. 18, 1956.

Rehearing Denied Jan. 15, 1957.

Reuben L. Newton, Jasper, for appellant.

John Patterson, Atty. Gen., and J. Noel Baker, Asst. Atty. Gen., for the State.

CATES, Judge.

Leonard E. Ashmore on August 20, 1954 made complaint in the county court by way of affidavit that Harold Wallis had, by means therein stated, levied blackmail upon him.

Having been adjudged guilty, Wallis took an appeal to the Walker Circuit Court, whence he comes to us on appeal from a judgment of December 2, 1954 upon a jury verdict. He was sentenced to be

punished by serving six months hard labor and by payment of $100 fine and costs. The fine and costs not being paid at the time of sentence, commutation thereof was made under Title 15, Section 341, Code 1940.

To the solicitor's complaint Wallis filed pleas of former jeopardy and autrefois acquit, and issue was joined. The defendant having declined, after request, to introduce any evidence in support of said pleas, the court found in favor of the State, denied the pleas, to which the defendant excepted. To the complaint the defendant pleaded not guilty, and trial ensued.

Under the evidence for the State, the jury could have inferred as follows:

Ashmore worked at a radio repair business at the corner of 20th Street and Second Avenue in Jasper, Alabama. Next door Wallis had a used car lot. On August 18, 1954, between 10:30 and 11:00 o'clock in the forenoon, Ashmore was walking toward his shop when he saw Wallis standing in front of the latter's establishment. Wallis said to him in quite a loud voice, "Come here; I want to talk with you." To which Ashmore rejoined, "I haven't got time to mess with you," and continued on his way. Wallis fell in behind him five or six steps back and said, "Stop or I'll kill you." In Wallis' hand Ashmore saw a revolver which was being held on him at chest level.

Wallis then said, "Are you going to pay for that fender? Put five dollars on the pavement there to pay for it." Ashmore said he didn't have five dollars. To which Wallis stated that Ashmore would pay for the fender or he would kill him. The defendant, evidently convinced that Ashmore didn't have the money demanded, marched him at gun point across the street to the garage of Posey and St. John. There Ashmore asked C. A. Posey if he would fix the fender on Wallis' green Cadillac and charge it to him, i. e. Ashmore.

The bill for repairing the fender came to $14.50, and Ashmore paid it.

The oral charge was accepted under the waiver doctrine of McFarling v. State, 35 Ala.App. 191, 45 So.2d 322.

■ Motion for a new trial was filed and alleged among other things that the jury brought in a quotient verdict. Upon a hearing, the circuit clerk testified that about five minutes after the jury same back he found in the jury room on the table twelve torn pieces of white paper with figures on each, ranging from 125 to 50 (eight having $ before the figures). There was a thirteenth piece of paper on which the figures were summed up and divided by 12, showing a result of about 94.

A juror was called for the State who testified that after they deliberated for about five minutes Wallis' guilt was unanimously decided on. Thereafter each juror wrote his notion of a fine on a slip of paper and these were averaged. He and two other jurors denied that they were to be bound in advance. One juror indicated that he thought he was bound to go along with the average.

In this state of the evidence, we cannot say that the trial court abused its discretion in overruling the motion. There was substantial evidence from which it could be rationally inferred that there was no prearrangement to be bound by the quotient. Copeland v. State, 252 Ala. 399, 41 So.2d 390; Uptain v. State, 37 Ala.App. 290, 71 So.2d 111.

■ No evidence having been adduced to support the pleas of former jeopardy and autrefois acquit (which were not verified), there is nothing in the record which would enable us to review the basis of the denial of these pleas at nisi prius. Creel v. State, 23 Ala.App. 241, 124 So. 507.

■ Wallis insisted there was error in the solicitor having Ashmore use a pistol (which was never offered in evidence) to illustrate to the jury how Wallis had presented his gun against Ashmore's chest. Perhaps in a murder trial there could be injury in such an experiment, see State v.

Wynne, 353 Mo. 276, 185 S.W.2d 294, per contra Newkirk v. State, 134 Md. 310, 106 A. 694, nevertheless here we perceive none. The trial court, after objection, had the gun moved from the view of the jury temporarily, and there is nothing to show it was used in argument or taken into the jury room. Though a civil case, Loreno v. Ross, 222 Ala. 567, 133 So. 251, seems decisive for our review here. See also Vaughn v. State, 25 Ala.App. 204, 143 So. 211.

No error being apparent the judgment of the trial court is due to be

Affirmed.

### On Application for Rehearing

Agreeably with the request of appellant we set out the pertinent part of the testimony of the juror who seemed to think himself bound to a quotient verdict:

"A. They came to a conclusion it would be, in place of ninety something—it was close to a hundred—it would be a hundred. It was understanding with me that it would be whatever it divided out by.

"Q. It was your understanding that whatever you all got from that was what the fine would be? A. That is exactly right; that is the way I understood it.

"Q. You don't know what the others understood, do you? A. No, sir, certainly don't."

We also excerpt from the testimony of the first juror to testify on the motion for a new trial:

"Q. All right, now. Did you agree, Sam, before you say you got this figure of ninety-something dollars, that that would be the fine that you would give the defendant in this case. A. No."

And from the third juror:

"A. Some wanted to fine him some, one thing, and some another, and the foreman suggested, or one of the men in there, I don't remember just which one it was, says, 'Each man put whatever you want to fine him down on a piece of paper, lay it on the table, and we will divide it by twelve and we will have something to go by.' Another man raised up and over there and said, 'Is that going to be the price that you are going to fine him,' and there was two or three spoke up, the way that I saw it, and said, 'No, sir, that won't be it.'

"Q. What did you say, if anything? A. I was sitting there just listening at that time. Then one said, 'It might be too much,' and another said, 'It might not be enough.'

"Q. Did you agree as an individual juror that the result you got from adding up those numbers and dividing them by twelve, that that is what you would give the defendant in this case? A. No. I didn't; I agreed just like the rest, that we would put that down, divide it by twelve, and see what it would come to before we ever had any understanding what it would be.

"Q. Did you make any agreement about what you would fine the defendant before you wrote these pieces of paper down? A. No, I didn't do it.

"Q. I mean wrote these numbers down on pieces of paper? A. No.

"Q. Was it your understanding there that after you got these figures from adding these numbers up on pieces of paper and dividing it by twelve that you could accept it or reject it? A. Yes."

This recital suffices to show that there was no advance agreement to be bound by the arithmetic.

Application for rehearing overruled.